IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0401-WS-M |
| ) | |
| THE COOPERATIVE DISTRICT OF THE ) | |
| CITY OF SPANISH FORT – HIGHWAY ) | |
| 98 PUBLIC FACILITIES, ) | |
| ) | |
|     Defendant. ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Preliminary Injunction (doc. 3). Both the original briefing and supplemental briefing on a jurisdictional issue have been completed, and the Motion is now ripe.

**I.     Procedural History.**

In March 2007, defendant, The Cooperative District of the City of Spanish Fort – Highway 98 Public Facilities (the "District"), issued $30.5 million in Public Improvement Revenue Bonds, Series 2007 (the "Bonds") to finance public infrastructure improvements for a commercial / residential development in Spanish Fort, Alabama. Plaintiff, U.S. Bank National Association ("U.S. Bank"), is trustee of a New York law trust (the "Certificate Trust") into which 100% of the Bonds were ultimately deposited. Debt service obligations on the Bonds were to be financed exclusively through license fees collected on retail sales and hotel room rental fees at the development; however, such fees have proven inadequate at their present rates to meet debt service costs. With the possibility of default looming as early as next spring, U.S. Bank, in its capacity as trustee, filed suit against the District. The stated purpose of this action is to compel the District to increase those license fees to a rate that U.S. Bank deems sufficient to cover those debt service obligations.[1] U.S. Bank also moved for a preliminary injunction

---

[1] The suit is predicated on a provision in the Trust Indenture executed by the District in issuing the Bonds, wherein the District agreed that, under certain conditions, it would increase the rate of the license fees as directed by holders of not less than two-thirds of the Bonds (Continued)

seeking to force the District to take immediate action to increase rates during the pendency of this litigation.

By bringing this action in federal court, U.S. Bank alleged that subject-matter jurisdiction was proper on diversity of citizenship grounds, pursuant to 28 U.S.C. § 1332. With the amount in controversy threshold obviously satisfied, U.S. Bank asserted that complete diversity is present because U.S. Bank is a citizen of Ohio for diversity purposes, while the District is an Alabama citizen. Neither party's citizenship appears in question. Nonetheless, in initial briefing on the Motion for Preliminary Injunction, the District challenged whether U.S. Bank's citizenship even matters, or whether the real party in interest is the Certificate Trust. If the latter is true, then the Certificate Trust beneficiaries' citizenship must be considered in the jurisdictional inquiry, with potentially diversity-destroying consequences. In an Order (doc. 26) entered on August 26, 2011, the undersigned expressed concern as to whether U.S. Bank (as trustee) is in fact the real party in interest under applicable law, and directed supplemental briefing on that jurisdictional question.[2] Such supplemental briefing is now concluded.

## II. Jurisdictional Analysis.

### A. *The* **Navarro** *Decision.*

The appropriate analytical starting point is the Supreme Court's decision in *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). In *Navarro*,

---

to a level that would yield at least 100% of the maximum annual debt service requirement for the next succeeding bond year. The parties agree that such a request was made by the Certificate Trust servicer in April 2011, but that the District failed to act on or implement the bondholders' directive within the 90-day period specified in the Trust Indenture. This action followed.

[2] Supplemental briefing was authorized to maximize fairness to both sides. After all, the District had identified its jurisdictional objection not in the context of a Rule 12(b)(1) motion, but as one of a host of arguments presented in opposition to the Motion for Preliminary Injunction. As the August 26 Order noted, it was unclear from initial briefing whether U.S. Bank could or could not make an adequate showing of jurisdiction, "given the parties' limited treatment of jurisdictional issues in their briefs, which were submitted under a highly compressed timetable and were understandably focused on the merits of U.S. Bank's Motion for Preliminary Injunction, rather than the accompanying jurisdictional concerns." (Doc. 26, at 11.) That concern has now been remedied. Both sides have availed themselves of the opportunity to submit supplemental briefs squarely focused on whether diversity of citizenship exists in this case, and addressing specific matters identified in the August 26 Order.

individual trustees of a business trust filed suit against a Texas savings and loan association in federal court. The trustees were diverse from the defendant, but certain beneficial shareholders of the trust were not. In a nutshell, the question presented was whose citizenship counted. The Supreme Court held that those trustees could sue in federal court based on their own citizenship, so long as they were real parties to the controversy. The *Navarro* Court explained that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." 446 U.S. at 464. The Court then examined the trustees' specific rights and responsibilities under the declaration of trust, observing that the trust document authorized the trustees to take legal title to trust assets, to invest those assets, and to sue and be sued as trustees; and that the beneficial shareholders "can neither control the disposition of this action nor intervene in the affairs of the trust except in the most extraordinary situations." *Id.* at 464-65. On the basis of these facts, the Court wrote the following:

> "We conclude that these respondents are active trustees whose control over the assets held in their names is real and substantial. … The respondents are not 'naked trustees' who act as 'mere conduits' for a remedy flowing to others. … They have legal title; they manage the assets; they control the litigation. In short, they are real parties to the controversy. For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries. We find no reason to forsake that principle today."

*Id.* at 465-66.

In the case at bar, all parties are in agreement that if the citizenship of the Certificate Trust's beneficiaries is relevant for diversity purposes, then § 1332 jurisdiction is lacking and this action cannot proceed in federal court. (*See* doc. 27, at 2 n.1; doc. 30, at 3.)[3] Nonetheless,

---

[3]  In particular, plaintiff concedes that one of the Certificate Trust's two certificate holders is a Maryland limited liability company, one of whose members is a Delaware publicly traded limited liability company, whose shareholders include Alabama citizens. Under well established law, limited liability companies are deemed citizens of all states of which their members are citizens. *See, e.g., Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (holding that "like a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen"). Pursuant to the foregoing facts, then, the Certificate Trust's Maryland LLC certificate holder would clearly be a citizen of Alabama (among other states). The District is also an Alabama citizen for diversity purposes. Accordingly, if the Certificate Trust's certificate holders (and not U.S. Bank (Continued)

U.S. Bank adopts a two-pronged approach to meet its burden of showing that federal jurisdiction is proper. *See, e.g., Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) ("The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim."). First, U.S. Bank contends that the plain language of *Navarro* quoted above should not be applied here. Second, U.S. Bank suggests that if *Navarro* does apply, it can meet that standard. The Court will address each of these contentions in turn.

### B.   Navarro *Applies and Means What It Says.*

As an initial matter, U.S. Bank urges this Court to find that the *Navarro* framework does not apply or is otherwise non-binding here. These arguments are unpersuasive.

Plaintiff brands *Navarro*'s analysis of the trustee's responsibilities and duties as mere "dicta" that can be safely ignored. (Doc. 27, at 2, 4-5.) But this contention contradicts plaintiff's previous acknowledgment that the *Navarro* standard (relating to when a trustee's powers render it a real party in interest for diversity purposes) was holding, not dicta.[4] U.S. Bank cannot be heard to reverse course on its characterization of the key language in *Navarro*. More to the point, framing the *Navarro* test as dicta is simply inaccurate. The Eleventh Circuit has explained the relationship between "holding" and "dicta" thusly: "dicta is defined as those portions of an opinion that are not necessary to deciding the case then before us, whereas holding is comprised both of the result of the case and those portions of the opinion necessary to that result by which we are bound." *Powell v. Thomas*, 643 F.3d 1300, 1304-05 (11th Cir. 2011) (citation and internal quotation marks omitted). To achieve the result in *Navarro* (namely, that the trustee was the real party in interest and could therefore sue without regard to trust beneficiaries' citizenship), the Supreme Court needed to assess the facts concerning the trustee's duties and authority within the context of the legal framework delineating which trustees are permitted to sue in their own

---

as trustee) are the real parties in interest, complete diversity is nonexistent and this action must be dismissed for want of jurisdiction.

[4]   The relevant passage in plaintiff's initial brief reads as follows: "To be sure, the *Navarro* Court held that, to be considered the real party to the controversy for purposes of diversity jurisdiction, trustees should possess[] certain customary powers … and not be merely naked trustees who act as mere conduits for a remedy flowing to others." (Doc. 23, at 2 (internal quotation marks omitted).)

names. That framework – the very aspect of *Navarro* from which U.S. Bank seeks to distance itself – is holding, not dicta.

At any rate, even if *Navarro*'s language were dicta, it would nonetheless remain entitled to considerable persuasive weight in the analysis, particularly as a Supreme Court interpretation of its own prior precedents. *See generally Schwab v. Crosby*, 451 F.3d 1308 (11th Cir. 2006) ("[T]here is dicta, and then there is dicta, and then there is Supreme Court dicta. This is not subordinate clause, negative pregnant, devoid-of-analysis, throw-away kind of dicta. It is well thought, thoroughly reasoned, and carefully articulated analysis by the Supreme Court describing the scope of one of its own decisions."); *United States v. City of Hialeah*, 140 F.3d 968, 974 (11th Cir. 1998) ("Even though that statement by the Supreme Court … was dictum, it is of considerable persuasive value, especially because it interprets the Court's own precedent."); *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997) ("dicta from the Supreme Court is not something to be lightly cast aside").

For the foregoing reasons, the Court cannot agree that the portion of the *Navarro* decision setting forth and applying the legal standard by which a trustee's duties and powers are measured in determining whether it is the real party in interest is mere dicta to be jettisoned at will.

Next, plaintiff protests that the test devised in *Navarro* is flawed because it did not establish "a bright line rule to distinguish between trustees who are sufficiently 'active' to be deemed real parties in interest and those who are too 'passive' to be so considered." (Doc. 27, at 2.)[5] This is not a viable basis for disregarding *Navarro* or refashioning its holding into a different legal standard that might be more convenient and straightforward to apply. To be sure, life might be easier and more certain for lower courts and litigants alike if the Supreme Court traded exclusively in bright-line rules, but the inescapable reality is that it often does not.[6]

---

[5] Plaintiff expounds on this argument by decrying an interpretation of *Navarro* that would oblige lower courts "to engage in a detailed, yet murky, dissection of trust agreements, with no clear guidance as to the combination and degree of powers and authority that are sufficient to make the trustees 'active' enough to be deemed real parties in interest." (*Id.* at 11.)

[6] *See generally Croom v. Balkwill*, 645 F.3d 1240, 1248 n.12 (11th Cir. 2011) (noting that in most Reasonableness Clause cases, the Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry") (citation omitted); *Palmyra Park Hosp. Inc. v. Phoebe Putney Memorial Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010) (explaining that, as to whether a plaintiff is an efficient enforcer (Continued)

Frequently, the Supreme Court promulgates generalized standards without delineating a mathematically precise point at which the line is crossed, leaving it to the lower courts to flesh out the details.  *Navarro* is in no way infirm or unworthy of consideration for adopting that paradigm.

Nor does plaintiff advance its cause by challenging the correctness of the *Navarro* Court's construction of prior Supreme Court precedents in articulating the appropriate legal test. (*See* doc. 27, at 3-5.)  This Court is not empowered to diverge from a Supreme Court holding merely because it disagrees with the underlying analysis.  *See generally Davis v. W. Bruns & Co.*, 476 F.2d 246, 249 (5th Cir. 1973) ("it cannot be repeated too often that the Supreme Court's decisional pronouncements constitute the law of the land").  Accordingly, it will not do to reject the *Navarro* test merely because U.S. Bank does not think the standard enunciated in that decision is the best or narrowest interpretation of the earlier precedents on which the Supreme Court relied.

Equally unavailing is U.S. Bank's assertion that "there is no Supreme Court precedent holding that a trustee of an express trust holding legal title to the trust's corpus is not the proper party to sue." (Doc. 27, at 5.)  Plaintiff would have the Court find that, as long as a trustee holds legal title to trust assets, that trustee is necessarily a real party in interest for diversity purposes. To so find, the undersigned would have to engage in a selective, unreasonably crabbed reading of *Navarro*, effectively blue-penciling large chunks of analysis and holding to skew its meaning. *Navarro* certainly did not say that a trustee is the real party in interest as long as it holds title to trust assets.  If that were what the Supreme Court had intended, it would have been wholly unnecessary for it to examine and comment on such considerations as the trustee's  powers to invest assets and to sue and be sued; the beneficial shareholders' lack of authority to weigh in on trustee investment decisions, control litigation strategy, or dictate trust affairs; or the trustee's status as something more than a "mere conduit."  If plaintiff's reading were correct, the Supreme

---

of antitrust laws, "the Supreme Court declined to articulate a bright-line rule and instead directed courts to consider a number of factors"); *Dombrowski v. Mingo*, 543 F.3d 1270, 1276 (11th Cir. 2008) ("we are mindful of the Supreme Court's reminder that rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule") (citation and internal quotation marks omitted).

Court could have skipped all of the above discussion and simply decreed that a trustee's title to trust assets is a binary on/off switch that singlehandedly dictates whether the trustee is a real party in interest. *Navarro* did nothing of the sort. In short, *Navarro* does not reasonably stand for the proposition that title in trust assets is all that matters for determining whether a trustee is a real party in interest for jurisdictional purposes.[7]

Finally, U.S. Bank argues that "[t]he comparative degree of a trustee's rights and authority should not control whether a trustee of an express trust is deemed the real party in interest." (Doc. 27, at 10.) Where, as here, the Supreme Court has spoken directly on the very issue presented, lower courts do not have the luxury of deciding what the law "should be," but are instead governed by what the law "is." On this topic, the law is that a trustee's rights and authority are the touchstone of the real-party-in-interest inquiry. In the wake of *Navarro*, numerous courts have performed precisely the functional analysis that plaintiff protests but that *Navarro* requires to determine whether a trustee is a real party in interest. *See, e.g., Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 200-01 (3rd Cir. 2007) ("In a suit by … individual trustees of a trust, where the trustees possess certain customary powers to hold, manage and dispose of assets, their citizenship, and not that of the trust beneficiaries, is controlling for diversity of citizenship purposes.") (citation and internal quotation marks omitted); *Goldstick v. ICM Realty*, 788 F.2d 456, 458 (7th Cir. 1986) (examining powers of trustees in applying *Navarro* to analysis of whether trustees are real parties to controversy for purposes of diversity jurisdiction); *Argo Global Special Situations Fund v. Wells Fargo Bank, N.A.*, --- F. Supp.2d ----, 2011 WL 3837079, *3-6 (D. Minn. Aug. 30, 2011) (trustee is a nominal defendant, and not a real party in interest, where plaintiffs' remedies would merely "flow through" it as indenture trustee, and where trustee was named "solely to facilitate the mechanics of the relief [plaintiffs] seek"); *Andrews v. Modell*, 636 F. Supp.2d 213, 221 (S.D.N.Y. 2008) ("In sum, the sweeping powers given to the Trustees, as well as their … participation and

---

[7] Equally unfounded is plaintiff's blanket statement that "*Navarro* stands for the proposition that the trustee of an express trust is the real party in interest … [i]n the absence of evidence suggesting sham or collusion." (Doc. 27, at 11.) This Court will neither excise nor ignore the portions of *Navarro* that require a more nuanced, fact-intensive inquiry than that proposed by plaintiff. Rather than picking and choosing the language in the opinion that favors U.S. Bank and discarding the rest, the Court reads and applies *Navarro* as a whole.

involvement in this litigation, demonstrate that the Trustees are real parties to this controversy."); *Clifford v. American Int'l Specialty Lines Ins. Co.*, 2005 WL 2313907, *4-5 (M.D.N.C. Sept. 21, 2005) (examining plaintiff's functional responsibilities and determining that "Plaintiff is an active trustee with real and substantial authority," such that the trustee is a real party to the controversy for purposes of diversity jurisdiction); *Bostic Development at Lynchburg LLC v. Liberty University Inc.*, 2005 WL 2065251, *2 (W.D. Va. Aug. 25, 2005) ("assuming the trustee of the Hahn Family Investment Trust possesses the customary powers of a trustee, Plaintiff must identify and state the citizenship of its trustee to properly plead diversity jurisdiction"); *Regions Bank v. Blount Parrish & Co.*, 2004 WL 3832307, *2 (M.D. Ala. Sept. 30, 2004) ("the language of the indenture agreement controls whether the trustee may bring suit on behalf of the bondholders"); *Karras v. Teledyne Industries, Inc.*, 191 F. Supp.2d 1162, 1172-73 (S.D. Cal. 2002) (finding that plaintiff trustee was real party in interest under *Navarro* where trustee "possesses the sole power to manage Trust assets and compromise claims in litigation"); *Wonders Trust v. Deaton, Inc.*, 200 F.R.D. 473, 478 (M.D. Fla. 2000) ("A trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.") (footnote omitted); *Status Design LP v. Montgomery Ward & Co.*, 1990 WL 179720, *2 (N.D. Ill. Nov. 6, 1990) (examining trustee's powers and duties in reaching conclusion that trustee was real party in interest whose citizenship is determinative for jurisdictional purposes); *Windward City Center of Hawaii v. Transamerica Occidental Life Ins.*, 613 F. Supp. 1216, 1218 (D. Haw. 1985) (noting that *Navarro* "held that the trustees were the 'real parties to the controversy' because they held legal title, managed the assets, and controlled the litigation").[8]

---

[8] In opposing this approach, U.S. Bank directs the Court's attention to the Seventh Circuit's observation that "[w]e have in the past resisted efforts to base determinations of citizenship on functional considerations, and we will continue to do so." *May Dep't Stores Co. v. Federal Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002). But *May* was not analogous to the case at bar. It was not a real-party-in-interest case, but was instead a case in which the appellate court determined the citizenship of a trust (the named party) for diversity purposes. That is not our issue, and does not implicate the *Navarro* holding. On other occasions, the Seventh Circuit has adhered to a *Navarro*-type functional analysis in ascertaining whether a litigant is a real party in interest. *See, e.g., Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir. 1985) (recognizing that "touchstone of the test" for real party in interest status "is a review of the representative's legal powers, rights and duties"). Equally unavailing is plaintiff's reliance on *Catskill Development,*
(Continued)

For all of these reasons, the Court will follow the *Navarro* test as set forth in that opinion. That is to say, U.S. Bank will be deemed a real party to the controversy if it possesses customary powers to hold, manage, and dispose of trust assets. In applying this legal standard, the Court will look to whether the Certificate Trust beneficiaries control the assets, the litigation, and other trust affairs; whether U.S. Bank is an active trustee whose control over the assets held in its name is real or substantial; and whether U.S. Bank is a "naked trustee" or "mere conduit" for remedies flowing to others. Of course, the analysis also proceeds in conformity with the black-letter requirement that U.S. Bank (as the party invoking federal jurisdiction) must establish that it (rather than the Certificate Trust) is a real party in interest, such that diversity jurisdiction lies.

### C.   *Plaintiff Has Not Met Its Burden Under* **Navarro**.

In the August 26 Order, the undersigned expressed doubts that U.S. Bank possessed the necessary degree of real and substantial control to render it a real party in interest in this dispute. Specifically, the August 26 Order looked to the following provisions of the applicable Trust Agreement for the Certificate Trust: (i) a provision forbidding U.S. Bank from acting on any request for "amendment, modification, waiver or other action modifying any Bonds," or on any "written solicitation for any action with respect to any Bonds," without first mailing notice to, and requesting instruction from, all certificate holders of record, and further obligating U.S. to act "in accordance with the instructions given, or not given" (Doc. 1, Exh. D, § 3.02(a)); (ii) a provision barring U.S. Bank from consenting to any alteration in timing or amount of Bond payments without the certificate holders' unanimous consent (*id.*); (iii) a provision precluding U.S. Bank from directing "the Bond Trustee to exercise remedies with respect to any of the Bonds" unless directed to do so by the certificate holders (*id.*, § 3.02(b)); and (iv) a provision generally stating that U.S. Bank "shall not take any action as the nominal holder or owner of any of the Bonds, either alone or as part of a group of holders of owners of such Bonds, except in

---

*L.L.C. v. Park Place Entertainment Corp.*, 547 F.3d 115 (2nd Cir. 2008). After all, the *Catskill* opinion looked to the functional responsibilities of the trustee in its jurisdictional inquiry. *See id.* at 124 ("the express terms of the Trust agreement place full responsibilities and powers over the litigation in the Trustees, and we have no reason to believe that these terms of the agreement are not being honored").

accordance with the affirmative direction of the Holders of [the certificates] … after notifying such Holders of such action in writing" (*id.*, § 3.02(c)).

Examining these aspects of the Trust Agreement collectively, the undersigned opined in the August 26 Order that they "imply that U.S. Bank's power to manage assets and control litigation is illusory, and that the certificate holders actually pull the strings and make all meaningful decisions in that regard, with U.S. Bank merely charged with carrying out their wishes." (Doc. 26, at 9.) The Court continued: "This observation, in turn, implies that U.S. Bank does not possess the sort of real and substantial control over the assets required by the *Navarro* Court to render it a real party in interest …." (*Id.*)

In response to that August 26 Order, U.S. Bank attempts to establish that it possesses real and substantial control over the trust assets.[9] Specifically, it points to provisions in the Trust Agreement specifying that U.S. Bank holds full legal title to the Bonds. (Doc. 1, Exh. D, §§ 2.03(a)(iii), (b) & (d).) That may be true, but is in itself insufficient for the reasons already set forth in § II.B., *supra*. To buttress this allegation, U.S. Bank asserts that it is "entitled to direct the bond trustee or bond issuer regarding any action or consent under the Trust Indenture regarding the … Bonds, including any direction to increase the rates of the License Fees." (Doc. 27, at 9.) By plaintiff's own admission, however, its authority to direct the bond issuer is both hollow and derivative, inasmuch as U.S. Bank serves as the mouthpiece of the certificate holders and acts only at their affirmative direction. In other words, while U.S. Bank may indeed be the entity that speaks the words telling the bond servicer or bond issuer to increase license fee rates, it does not make that decision independently and can act only as directed to do by the certificate holders.[10] This responsibility, then, is not symptomatic of the kind of real and substantial control

---

[9] In endeavoring to make that showing, U.S. Bank states that "a great many current trustees, perhaps the majority, lack the full extent of the powers and authority conferred on the *Navarro* trustees." (Doc. 27, at 10.) However, the relevant question is not a straight-up comparison of whether U.S. Bank has as much power and authority as the *Navarro* trustees, but whether U.S. Bank has sufficient power and authority to constitute a real party in interest under the *Navarro* framework. A comparison of U.S. Bank's degree of control to that of the *Navarro* trustees, without more, is not dispositive, and may not even be illuminating.

[10] This fact is confirmed by § 3.02(c) of the Trust Agreement, which specifies that U.S. Bank "shall not take any action as the nominal holder or owner of any of the Bonds, either alone or as part of a group of holders of owners of such Bonds, except in accordance with the affirmative direction of the Holders of [the certificates] … after notifying such Holders of such (Continued)

contemplated by *Navarro*. Nor is it persuasive for paintiff to assert that "U.S. Bank is implicitly empowered to sue the bond trustee or bond issuer ***at the direction of the certificate holders***." (Doc. 27, at 10 (emphasis added).)[11] On its face, this fact does nothing to demonstrate any "real and substantial" control by U.S. Bank over the trust assets, as required under *Navarro* for it to be a real party in interest. Instead, it reinforces the notion that U.S. Bank has little real authority or discretion of any kind, but simply does the certificate holders' bidding.

On this showing, the Court cannot find that U.S. Bank has satisfied its burden of showing that it is an active trustee whose control over trust assets is real and substantial. Plaintiff has not demonstrated that it actually manages the assets, controls the litigation, or takes any action with respect to the Bonds except as affirmatively directed by the certificate holders. Given U.S. Bank's narrowly cabined powers and authority under the Trust Agreement, and the certificate holders' corresponding extensive power to control the disposition of this action and the affairs of the Certificate Trust, the Court concludes that U.S. Bank is a "naked trustee" acting as a mere conduit for a remedy flowing to others. U.S. Bank is not a real party in interest; therefore, its citizenship is not binding for diversity purposes, and the citizenship of the certificate holders (the real parties to this controversy) controls. All parties agree that there is not complete diversity of

---

action in writing." (*Id.*, § 3.02(c).) Likewise, § 3.02(b) of the Trust Agreement proscribes U.S. Bank from directing "the Bond Trustee to exercise remedies with respect to any of the Bonds" unless directed to do so by the certificate holders. (*Id.*, § 3.02(b).)

[11] To be sure, it is a correct statement that U.S. Bank cannot take any action as holder or owner of the Bonds without the certificate holders' affirmative direction, and cannot direct the Bond Trustee to exercise remedies as to the bonds unless the certificate holders direct it. (Doc. 1, Exh. D, §§ 3.02(b), (c).) But it is not at all clear from the cited portions of the Trust Agreement that U.S. Bank is empowered to sue on behalf of trust beneficiaries. Plaintiff admits that no such authority is expressly conferred on it by the Trust Agreement. (Doc. 27, at 9-10.) While U.S. Bank insists that the power to sue is implicit, this proposition seems questionable under plaintiff's own cited authorities, plus the contract language. *See Bullard v. Cisco*, 290 U.S. 179, 189, 54 S.Ct. 177, 78 L.Ed. 254 (1933) (trust documents should carefully and fully define trustee's authority "for trustees are not permitted to go beyond such as is given expressly or by necessary implication"); doc. 1, Exh. D, § 6.01 (U.S. Bank "shall be responsible for performing such duties and only such duties as are specifically set forth in the Agreement"). Even assuming that U.S. Bank is implicitly empowered to sue, its control is illusory given plaintiff's concession that it can only exercise that power at the certificate holders' affirmative direction.

citizenship between the certificate holders and the District. As such, federal diversity jurisdiction is lacking, and dismissal of this action is required for want of federal subject-matter jurisdiction.[12]

### III. Conclusion.

For all of the foregoing reasons, this action is **dismissed without prejudice** on the ground that plaintiff has not established the existence of federal subject-matter jurisdiction.

DONE and ORDERED this 29th day of September, 2011.

    s/WILLIAM H. STEELE
    CHIEF UNITED STATES DISTRICT JUDGE

---

[12] In light of this determination, the Court cannot reach the merits of the pending Motion for Preliminary Injunction. *See, e.g., Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010) ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.") (citation omitted); *Guevara v. Republic of Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006) ("If the court finds that it does not have subject matter jurisdiction, the court's sole remaining act is to dismiss the case for lack of jurisdiction.") (citation and internal quotation marks omitted).